# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEAH MICHELLE AMEDEE** | **CIVIL ACTION NO.** |
| **VERSUS** | **18-00487-SDD-RLB** |
| **SHELL CHEMICAL LP-GEISMER PLANT** | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, Shell Chemical LP ("Shell" or "Defendant"). Plaintiff, Leah Michelle Amedee ("Amedee" or "Plaintiff"), filed an *Opposition*[2] to which Shell filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's motion for summary judgment should be granted.

## I. FACTUAL BACKGROUND

Plaintiff was hired by Shell in August 2012 in the position of ID Process Technician in the Alpha Olefins and Isomerization Unit ("AOID Unit") at the Geismer Plant.[4] Plaintiff claims that she has worked in this capacity for Shell despite the fact that she suffers from a lifelong condition of scoliosis and back pain.[5]

---

[1] Rec. Doc. No. 31.

[2] Rec. Doc. No. 36.

[3] Rec. Doc. No. 42.

[4] Rec. Doc. No. 31-1, p. 2 (Deposition of Amedee, Rec. Doc. No. 31-3, p. 7).

[5] Rec. Doc. No. 36, p. 5 (Declaration of Amedee, Rec. Doc. No. 36-2, p. 1). Amedee refers to numerous exhibits to her opposition to the motion for summary judgment that are purported medical records concerning her medical condition. None of these records are authenticated or proper evidence. *See, e.g., Richardson v. Oldham*, 811 F.Supp. 1186, 1198 (E.D. Tex. 1992)(excluding from summary judgment evidence "unauthenticated medical reports containing hearsay material, unauthenticated police records and unauthenticated photographs of [plaintiff's] injuries") (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-192 (5th Cir. 1991), *aff'd*, 12 F.3d 1373 (5th Cir. 1994)); *see also United States v. Rhodes*, 788 F.Supp. 339, 342 (E.D. Mich. 1992)(noting that, absent an "affidavit authenticating the [document], the [document 51599

Shell had an attendance management policy that informed employees of the "company's expectations regarding attendance: be at work on time; make every reasonable effort to minimize the amount of time away from work; notify your immediate supervisor promptly when not able to be at work as scheduled; and comply with the medical documentation/notification requirements set forth within the policy."[6] Chargeable offenses include unexcused absences or absences that do not qualify for FMLA leave or an employee's failure to notify the supervisor that he/she is going to miss his/her shift.[7] After an employee exceeds two incidents within a twelve-month period and has received a counseling session, the employee is subject to the formal discipline process. The formal discipline process in place includes: an oral reminder which includes a written document; a written reminder; and a decision-making leave. Additional absences may result in higher discipline including termination of employment.[8]

Defendant contracted with the Reed Group to facilitate all FMLA leave requests and authorizations. It is the employee's responsibility to submit the appropriate medical certifications to the Reed Group within the allotted time to obtain approved FMLA leave.[9] Defendant contends that in the twelve-month period leading to Plaintiff's termination, she had the following unapproved absences that did not qualify for FMLA leave: Feb. 22,

---

does] not come under the business record exception to the hearsay rule" (citing, *inter alia, Duplantis*, 948 F.2d at 192)); *Maier-Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 57 (W.D.N.Y. 1994)(citing *Duplantis*). The Court will not consider any of these documents: Rec. Doc. Nos. 36-3, 36-4, 36-9 through 36-12, 36-22, 36-24, 36-29 through 36-35, 36-40.

[6] Rec. Doc. No. 31-1, p. 2 (Declaration of Chad Mason, Rec. Doc. No. 31-4, p. 2, ¶ 4).

[7] Rec. Doc. No. 31-1, p. 2 (Dec. of Chad Mason, Rec. Doc. No. 31-4, p. 2, ¶ 5).

[8] *Id.* at ¶¶ 6-7.

[9] *Id.* at ¶ 8.

51599

2015;[10] Apr. 8, 2015;[11] June 22, 2015;[12] July 16, 2015; Sept. 4, 2015; Nov. 9, 2015; Feb. 10, 2016; Feb. 22, 2016; and Feb. 29, 2016.[13]

Plaintiff disputes some of the dates listed as unapproved absences or leave. Plaintiff disputes July 16, 2015, arguing that she left work two hours before the end of her shift because she did not feel well. She claims to have sought medical treatment at an emergency room in Thibodeaux, Louisiana. She claims that her medical issues were related to being "picked on" at work. Plaintiff cites to no admissible evidence to support these "facts". Plaintiff also argues that leaving work early does not equate to a "chargeable absence" under Shell's policy and suggests that this incident was a "non-occupational disability".[14]

Plaintiff similarly disputes November 9, 2015 because she missed work due to a medical appointment "connected to an occupational disability" that should have been considered a "non-FMLA Occupational Health Issue".[15] Again, Plaintiff does not direct the Court to any admissible evidence in support of her "facts".[16]

---

[10] The Court notes that Feb. 22, 2015 is not within the twelve-month period prior to Plaintiff's termination. Also, Plaintiff argues that this date is not within "Shell's 12-month roll-off period". Rec. Doc. No. 36, p. 9.

[11] Defendant admits that Apr. 8, 2015 was later recoded as a personal day without pay, and this date was not counted towards Plaintiff's unapproved absences or absences that did not qualify for FMLA leave. However, Defendant does not direct the Court to any evidence supporting that this absence due to an automobile accident caused by driving under the influence of alcohol was later recoded and approved as a personal day of leave without pay. (Rec. Doc. No. 31-1, p. 4, n. 15).

[12] Plaintiff disputes this date. Plaintiff argues that this date was not included in the written reminder, that it was due to medical treatment, and that the absence was covered by FMLA. Rec. Doc. No. 36-2, Dec. of Amedee, pp. 7-8, ¶ 26.

[13] Rec. Doc. No. 31-1, pp. 3-4 (Dec. of Chad Mason, Rec. Doc. No. 31-4, p. 3, ¶ 9; Rec. Doc. No. 31-6).

[14] Rec. Doc. No. 36, pp. 9-10.

[15] Rec. Doc. No. 36, pp. 10-11.

[16] Plaintiff cites to "Exhibit 21, Janet Sanchez to Chad Mason and Monica Hagar, Shell 740" to support her argument that she had a medical appointment that was known and approved by Shell. The exhibit is a non-authenticated email that constitutes hearsay. *See Randall v. United Petroleum Transports, Inc.*, 131 F.Supp.3d 566, n. 7 (W.D. La. Sept. 17, 2015)("E-mails (like letters and other documents) must be properly authenticated or shown to be self-authenticating.")(citing *Uncle Henry's Inc. v. Plaut Consulting Inc.*, 240 F.Supp.2d 63, 71-72 (D.Me. 2003) *modified on reconsideration*, 2002 WL 31833139 (D.Me. Dec. 17, 2002) and *aff'd sub nom. Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33 (1st Cir. 2005); *see also U.S. v.* 51599

Plaintiff contends that she took "intermittent FMLA leave" from September 2014 through March 2015 due to her neck and lower back pain.[17] Plaintiff also disputes Defendant's labeling of her absences or calling in to work as sick as "occurrences" that were used against her in the formal disciplinary process. Plaintiff contends that if an employee is scheduled for overtime work and calls in sick, it is not considered an "occurrence" for discipline purposes. Plaintiff contends that she was treated unfairly in this respect.[18]

Defendant argues that unsuccessful counseling sessions took place with Plaintiff, after which she received an oral reminder memorialized in writing and a written reminder. This purportedly qualified for the first two steps in Shell's formal disciplinary process.[19] The written reminder is dated March 10, 2016, and Plaintiff does not dispute receiving the written reminder on this date.[20] Plaintiff argues that the "occurrences" that are outlined in the written reminder "were undeserved," and this was communicated to Chad Mason ("Mason"), Human Resources Account Manager, at Shell.[21]

On the very next day, March 11, 2016, it is undisputed that Plaintiff was operating her vehicle, she was involved in a one-vehicle accident, was arrested and issued a citation

---

*Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000)). Plaintiff also directs the Court to the Geismar Attendance Management System policy regarding chargeable and non-chargeable absences; however, Plaintiff does not direct the Court to any evidence supporting a finding by Shell or the Reed Group corroborating Plaintiff's conclusion that her "absences" were non-FMLA and approved.

[17] Rec. Doc. No. 36-2, p. 3, ¶ 14.

[18] Rec. Doc. No. 36-2, Dec. of Amedee, p. 7.

[19] Rec. Doc. No. 31-1, pp. 4-6 (Dec. of Chad Mason, Rec. Doc. No. 31-4, pp. 3-4, ¶¶ 9-13; Rec. Doc. No. 31-5; Rec. Doc. No. 31-6).

[20] Rec. Doc. No. 31-1; Rec. Doc. No. 31-6. See Rec. Doc. No. 36, p. 9.

[21] Rec. Doc. No. 36, pp. 9-11; Rec. Doc. No. 36-2, p. 5, ¶ 15.

51599

for driving while intoxicated.[22]   Plaintiff testified that the accident occurred some time

before midnight on March 10, 2016, and that she was scheduled to report to work at 4:30

a.m. on March 11, 2016.[23]   Following the accident, it is undisputed that Plaintiff called

Harlan Hart ("Hart"), a supervisor at Shell, just before or around midnight and advised

that she was in an accident, that she would not be in to work, and that it should be coded

as "sick".[24]   Plaintiff argues that she was experiencing back pain due to the accident.[25]

The record evidence does not reflect that Plaintiff applied for FMLA leave for March 11,

2016, which was a Friday.  She later applied for FMLA leave beginning March 14 or 15,

2016.[26]

   Defendant contends that "after an investigation", Shell decided to terminate

Plaintiff.  After several attempts to reach Plaintiff by telephone, Shell sent Plaintiff a letter

terminating her employment.  The first termination letter was dated March 30, 2016, but

it was not delivered; therefore, Defendant issued the identical letter dated April 5, 2016.[27]

Plaintiff admits receiving these letters on "March 30, 2016, and later on April 8th".[28]

Plaintiff was terminated for allegedly failing "to show up/properly report off for scheduled

work".[29]   Plaintiff disputes the reason for her termination and argues that she was on

[22] Rec. Doc. No. 31-4, Dec. of Chad Mason, pp. 4-5, ¶¶ 14-15; Rec. Doc. No. 31-7; Rec. Doc. No. 31-2, Depo. of Amedee, pp. 163-173.  See Rec. Doc. No. 36, pp. 11-12; Rec. Doc. No. 36-2, Dec. of Amedee, pp. 5-6, ¶¶ 16-20.
[23] Rec. Doc. No. 31-3, Depo. of Amedee, pp. 163, 167-169.
[24] Rec. Doc. No. 31-3, Depo. of Amedee, pp. 169-171; Rec. Doc. No. 31-7.  See Rec. Doc. No. 36, pp. 12-13; Rec. Doc. No. 36-2, Dec. of Amedee, p. 6, ¶ 18.
[25] Rec. Doc. No. 36, pp. 13-14 (Dec. of Amedee, Rec. Doc. No. 36-2, ¶ 21).
[26] Rec. Doc. No. 31-3, Depo. of Amedee, p. 191, Plaintiff testified that she applied for FMLA leave on March 14, 2016.  Rec. Doc. No. 36, p. 14, Plaintiff argues in opposition to Defendant's motion that she contacted the Reed Group on March 15, 2016, "who certified Amedee FMLA eligible, subject to certification".  No properly authenticated evidence is offered in support of this statement.
[27] Rec. Doc. No. 31-1, p. 7 (Rec. Doc. No. 31-4, Dec. of Chad Mason, pp. 5-6, ¶¶ 15-20; Rec. Doc. No. 31-8).
[28] Rec. Doc. No. 36, p. 14.
[29] Rec. Doc. No. 31-8.
51599

FMLA leave at the time she was terminated.[30]   Plaintiff also contends that she had properly reported her leave, provided the necessary medical information to the Reed Group, and understood that most of her "absences" were approved and not considered "occurrences" subject to formal discipline.[31]   Plaintiff alleges that Defendant terminated her because of her back pain and medical treatment which was perceived as a disability in violation of the ADA.[32]

Plaintiff filed a charge of discrimination with the EEOC on July 11, 2016, alleging that she had been terminated in violation of the ADA.[33]   Plaintiff filed suit against Defendant, averring that Defendant violated the FMLA and the ADA.  Specifically, Plaintiff asserted the following claims:  (1) under 29 U.S.C. § 2614(a)(1) of the FMLA for failure to restore to an equivalent position;[34] (2) under 29 U.S.C. § 2615(a)(1) of the FMLA for interference with the exercise of FMLA rights; (3) under 42 U.S.C. § 12112(a) of the ADA for disability discrimination; and (4) under 42 U.S.C. § 12112(b)(5)(A) and (B) of the ADA[35]

---

[30] Rec. Doc. No. 36, pp. 14-15.

[31] Rec. Doc. No. 36-2, Dec. of Amedee, pp. 8-11.

[32] Rec. Doc. No. 36, p. 24, 26; Rec. Doc. No. 7, pp. 4-5, ¶¶ 23-29.

[33] Rec. Doc. No. 1-1.

[34] Defendant refers to this claim as Plaintiff's claim of discrimination under the FMLA.  Rec. Doc. No. 31-1, pp. 8-12.  However, s*ee Mauder v. Metropolitan Transit Authority of Harris County, Tex.*, 446 F.3d 574, 580 (5th Cir. 2006)(explaining that the FMLA contains two distinct provisions: entitlements or substantive rights (such as the right to return to the same position after an absence), and proscriptive rights (protecting employees from retaliation or discrimination)); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004)(A claim to restore the employee to the same position is a substantive FMLA right, and claims for violation of this right invokes entitlement or interference theories brought under § 2615(a)(1)).

[35] Defendant treats Plaintiff's claims made pursuant to 42 U.S.C. § 12112(b)(5)(A) and (B) as claims of discrimination based on a disability.  42 U.S.C. § 12112(a), entitled "General rule" states: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(b)(5)(A) and (B), entitled, "Construction", states: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes -- … (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is 51599

for failure to make reasonable accommodations and denying employment opportunities on the basis of a disability.[36] Defendant moves for summary judgment on Plaintiff's claims of discrimination under the FMLA and ADA and for claims of interference with Plaintiff's FMLA rights.[37] Defendant argues that Plaintiff fails to offer evidentiary support necessary to prevail on her claims and to defeat summary judgment. Defendant further contends that the uncontroverted evidence shows that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Plaintiff contends that Defendant's reasons for termination were merely pretext.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[38] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[39] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of

---

based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant…". Defendant addresses Plaintiff's third and fourth claims as one claim of disability discrimination. *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161-62 (5th Cir. 1996). However, *see Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016) ("Apart from any claim that an adverse employment action was motivated by the employee's disability, an employer's failure to reasonably accommodate a disabled employee may constitute *a distinct violation of the Act.*"(emphasis added)).

[36] Rec. Doc. No. 7, ¶¶ 22, 29.

[37] Rec. Doc. No. 31-1, p. 8.

[38] Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[39] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

51599

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[40] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[41] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[42]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[43] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[44] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[45] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[46] Unless

---

[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[41] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*)(quoting *Celotex,* 477 U.S. at 323-25, 106 S.Ct. at 2552).

[42] *Id.* at 1075.

[43] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[44] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

[45] *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[46] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

51599

there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[47]

The Court "has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[48] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any significant probative evidence tending to support the complaint.'"[49]

### B. Material Issues of Fact

#### 1. Statements of undisputed and disputed facts

In support of its motion for summary judgment, Defendant submitted a *Statement of Undisputed Material Facts*.[50] In opposition to Defendant's motion for summary judgment, Plaintiff submitted *Plaintiff's Statement of Disputed Material Facts*.[51] Defendant objects to Plaintiff's statement of disputed facts, arguing that it suffers from "egregious defects" that renders it unworthy of consideration.[52]

The party opposing summary judgment is obliged to set forth specific facts which demonstrate a genuine issue for trial.[53] When the nonmovant "fails to direct the Court to

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
[48] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[49] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. 249)(citation omitted)).
[50] Rec. Doc. No. 31-2.
[51] Rec. Doc. No. 36-1.
[52] Rec. Doc. No. 42, p. 1.
[53] FRCP 56; Local Rule 56.2.
51599

specific evidence in the record to controvert the supporting evidence set forth by the [movant] … the fact is deemed admitted pursuant to Local Rule 56.2."[54]

Plaintiff must demonstrate that there exist issues that merit a trial by directing the Court to record evidence which demonstrates facts which are in dispute.   Without countervailing Defendant's *Statement of Undisputed Facts,* but in an effort to demonstrate a dispute of material facts, Plaintiff offers *Plaintiff's Statement of Disputed Material Facts,*[55] *Sworn Declaration of Leah Michelle Amedee,*[56] and 43 other exhibits.[57]

Defendant challenges Plaintiff's statement of disputed facts because it contains "conclusory statements of opinion and unfettered argument".[58]   Specifically, Defendant challenges Paragraph 1[59] and Paragraph 15[60] of Plaintiff's statement of disputed facts.[61]   Conclusory statements without proper support do not meet the requirements of Rule 56(e).[62]   After reviewing Paragraphs 1 and 15 of Plaintiff's statement of disputed facts,

---

[54] *Antoon v. Woman's Hospital Foundation d/b/a Woman's Hospital*, 2012 WL 1094715, *2 (M.D. La. May 30, 2012).
[55] Rec. Doc. No. 36-1.
[56] Rec. Doc. No. 36-2.
[57] Rec. Doc. Nos. 36-3 through 36-45.
[58] Rec. Doc. No. 42, p. 1.
[59] Paragraph 1 of *Plaintiff's Statement of Disputed Material Facts* states: "The actions of Amedee's second line supervisor Rick Guba were impermissibly biased against her continued employment at Shell on account of his baseless assumption that Amedee's physical impairments made her continued employment at Shell undesirable." (Rec. Doc. No. 36-1, ¶ 1).  Plaintiff does not cite to any evidence or support for the statement.
[60] Paragraph 15 of Plaintiff's *Statement of Disputed Material Facts* states: "At approximately 11:00 p.m. Amedee called to inform Harlan Hart, a supervisor at Shell of her accident.  Hart was the first phone call Amedee made after her accident.  The police had not yet even arrived at the accident scene when Amedee made the call to Hart.  Amedee truthfully described her condition and what had happened.  [Defendant's Material Fact 16]." (Rec. Doc. No. 36-1, ¶ 15).  Plaintiff only cites to "Defendant's Material Fact 16".  She does not cite to any evidence or other purported support for the statement.
[61] Rec. Doc. No. 42, n. 1.
[62] *See Goodman v. Life Ins. Co. of North America*, 244 F.3d 138 (5th Cir. Dec. 15, 2000)(citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)("Although we consider the evidence in the light most favorable to the nonmoving party, … conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment.")(internal citations omitted); and *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *See also Miller Exploration Co. v. Energy Drilling Co.*, 130 F.Supp.2d 781, 785 (W.D. La. Jan. 3, 2001).
51599

the Court agrees with Defendant and finds that these paragraphs of Plaintiff's statement are conclusory or argumentative statements of opinion without any factual or evidentiary support. Accordingly, the Court will not consider Paragraphs 1 and 15 of *Plaintiff's Statement of Disputed Material Facts*.

Defendant next argues, "[e]ven where she does offer facts, they are almost entirely without support: only four of eighteen 'facts' contain any citation whatsoever."[63] However, Defendant does not cite to or challenge any specific paragraphs of Plaintiff's statement of disputed facts on these grounds. While the Court is able to determine which statements contain citations to purported factual and evidentiary support, the Court is unclear to which "facts" Defendant contends are "without support" and whether Defendant is seeking to strike all statements that contain no citation whatsoever.

Defendant continues, "[a]nd the e-mails and other documents that she does cite are also defective because they consist of unauthenticated hearsay and/or pertain to facts that are not material to Shell's motion for summary judgment."[64] The Court construes Defendant's argument to be that Plaintiff (1) did not support her statements of disputed facts by citing to proper evidentiary support, and (2) where Plaintiff did cite to purported support for her statement of fact, the document was not proper evidence because it was unauthenticated hearsay or immaterial to the motion before the Court. With that in mind, the Court considers *Plaintiff's Statement of Disputed Material Facts* with the exception of Paragraphs 1 and 15 which have already been ruled upon.

---

[63] Rec. Doc. No. 42, pp. 1-2.
[64] Rec. Doc. No. 42, p. 2.
51599

Paragraphs 5-18, 20-21, and 23 of *Plaintiff's Statement of Disputed Material Facts* do not contain any citation to any evidentiary support.[65] A party asserting that a fact is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that an adverse party cannot produce admissible evidence to support the fact.[66]

> But merely stating that a fact is disputed, as the plaintiffs did in their statement, is not sufficient to establish a genuinely disputed factual issue. Instead, as explained in Fed. R. Civ. P. 56(c)(1), a party asserting that a fact is genuinely disputed must support that assertion by citing to the record or showing that cited materials establish a genuine dispute. There is not a single record citation in the plaintiffs' statement…. The plaintiffs' effort in opposing the defendants' motion for summary judgment fell short of establishing any genuinely disputed issues of material fact.[67]

The Court finds that the same holds true here. Plaintiff's statement of "disputed facts" is insufficient where Plaintiff has not cited to the record and evidentiary support. As such, the Court will not consider Paragraphs 5-18, 20-21, and 23 of *Plaintiff's Statement of Disputed Material Facts.*

The Court turns to consideration of Paragraphs 2-4, 19, and 22 of *Plaintiff's Statement of Disputed Material Facts.*[68] Paragraph 2 of Plaintiff's statement asserts:

> Leah Amedee was examined by her physician on November 7, 2014 and Dr[.] Isaza concluded, 'I spoke with Leah about work. At this time I think that if she feels like she can do it physically, then that would be okay, so we will give her a full work release.' Exhibit 9, Amedee 005.[69] She was also

---

[65] Rec. Doc. No. 36-1, pp. 2-6.
[66] *See Oxford House, Inc. v. Browning*, 266 F.Supp.3d 896, n. 2 (M.D. La. July 24, 2017).
[67] *Skelton v. Iberia Parish School Board*, No. 16-00289, 2017 WL 4228724, *10 (W.D. La. Sept. 22, 2017). *See also Flores v. Cheddar's Casual Café, Inc.*, 2015 WL 12748639, *1 (S.D. Tex. July 17, 2015).
[68] Rec. Doc. No. 36-1.
[69] Exhibit 9 is an unauthenticated "Clinic Note" by Dr. Isaza, constituting one page and dated November 7, 2014. Rec. Doc. No. 36-11.
51599

given a Return to Work on November 10, 2014 by Nurse Stone at Shell. Ex. 42,[70] 'Return to Work', Shell 0225.[71]

Defendant challenges Paragraph 2 of the statement because "Amedee quotes a medical record from 2014 completely unrelated [to] Shell's argument and then offers no authentication or any support that would make this record admissible. The Fifth Circuit and Middle District of Louisiana have frequently noted that unauthenticated documents are not competent summary judgment evidence under Federal Rule of Civil Procedure 56."[72] "Similarly, hearsay documents are not competent summary judgment evidence under Federal Rule of Civil Procedure 56."[73] The Court agrees with the basis of Defendant's challenge to Paragraph 2 of Plaintiff's statement of facts. The statement contained in Paragraph 2 relies upon unauthenticated/hearsay documents that are insufficient evidence for purposes of summary judgment. The Court will not consider Paragraph 2.

Paragraph 3 of *Plaintiff's Statement of Disputed Material Facts* cites to and relies upon the *Declaration of Leah Amedee*[74] at Paragraph 11.[75] Defendant does not offer any specific objection to Paragraph 3 of Plaintiff's statement of disputed facts or to Paragraph

---

[70] Exhibit 42 is an unauthenticated document from "Shell Health" dated November 10, 2014, that appears to be a "Return to Work" form. Rec. Doc. No. 36-44.

[71] Rec. Doc. No. 36-1, p. 1.

[72] Rec. Doc. No. 42, p. 2, n. 2 (citing *Quibodeaux v. Nautilus Ins. Co.*, No. 15-40567, 2016 WL 3644641, *3 (5th Cir. July 7, 2016)("[T]he document is unauthenticated and thus is improper as summary judgment evidence.")(citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)); *Sanford v. Tropicana Entm't, Inc.*, No. 14-144, 2015 WL 7185536, *7 (M.D. La. Nov. 13, 2015); *Alleman v. Louisiana Dep't of Econ. Dev.*, 698 F.Supp.2d 644, 667 (M.D. La. 2010).

[73] *Id.* (citing *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir. 2001)(citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)); *Holladay v. Deutsche Bank Nat. Trust Co.*, No. 10-448, 2010 WL 4902445, *1 (M.D. La. Nov. 1, 2010)("On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial"); *Beta Tech., Inc. v. State Indus. Prod. Corp.*, No. 06-35, 2008 WL 4330105, *5, n.8 (M.D. La. Sept. 15, 2008).

[74] Rec. Doc. No. 36-2, pp. 2-3.

[75] Rec. Doc. No. 36-1, p. 2.

51599

11 of Plaintiff's declaration.  Upon the Court's review of both Paragraph 3 of Plaintiff's statement of disputed facts and Paragraph 11 of Plaintiff's declaration, the basis for excluding these statements is not apparent to the Court.  It is not for the Court to guess or speculate as to Defendant's grounds for same.[76]  As such, the Court will consider Paragraph 3 of *Plaintiff's Statement of Disputed Material Facts.*

Paragraph 4 of *Plaintiff's Statement of Disputed Material Facts* avers:

The series of 'Return to Work' examinations which Amedee was subjected to in December 2014 was impermissible because it failed to meet the criteria established by the FMLA and its implementing regulations.  Memorandum, p. 3 ff.  The examinations included Shell's 'Fitness to Work Certificate', dated Feb. 11, 2016.  Exhibit 41,[77] Shell 0012, 'Medical Examination Record', Shell 0013, Cardiac Risk Assessment Screening Form, Shell 0015, (impermissibly requiring certification from a medical examiner who is not Amedee's healthcare provider) Titmus II Vision Tester Record, Shell 0016, a 'Fit for Duty Medical Examination' performed by Amedee's treating physician Jorge Isaza on December 19, 2014, Shell 0020, a 'Health Status Questionnaire', (Shell impermissibly asking Amedee about a number of disability-related health issues), Shell 0024-27, and Hearing Evaluation Questionnaire, (Shell impermissibly asking about health conditions unrelated to FMLA leave) Shell 0028-29.  See FMLA implementing regulation 29 C.F.R. § 825.312.[78]

None of the documents, forms, or medical documents are authenticated and are, therefore, unreliable evidence on summary judgment.  For the same reasons applicable to the analysis of Paragraph 2 of Plaintiff's statement of disputed facts, the Court will not consider Paragraph 4 of Plaintiff's statement of disputed facts.

---

[76] *See U.S. v. Jimenez Lopez*, 873 F.2d 769, 773 (5th Cir. 1989)(*citing New Amsterdam Cas. Co. v. W. D. Felder & Co., Inc.*, 214 F.2d 825, 829 (5th Cir. 1954)("A trial court judge must be fully appraised of the grounds of an objection.").
[77] Exhibit 41, *in globo*, contains all of the documents listed in Paragraph 4.  Rec. Doc. No. 36-43.
[78] Rec. Doc. No. 36-1, p. 2.
51599

Paragraph 19 of *Plaintiff's Statement of Disputed Material Facts* contains three parts.[79]  The first section of Paragraph 19 relies upon "Exhibit 25, Shell 798".[80]  Exhibit 25 is a one-page document reflecting two email messages in an email string.  Plaintiff relies upon the top portion of the email attachment in Paragraph 19 of her statement of disputed facts, which has not been authenticated and contains hearsay.[81]  For the reasons applicable to the analysis of Paragraphs 2 and 4 of Plaintiff's statement, the first portion of Paragraph 19, as quoted by the Court herein, will not be considered on summary judgment.

The second portion of Paragraph 19 states, "Both he and Monica Hagar were identified by Chad Mason as being involved in the decision to terminate Amedee. Declaration of Chad Mason, Shell[']s MSJ Exhibit 2, ¶ 17."[82]  The record does not reflect that any party challenges the Declaration of Chad Mason, and the Court is not aware of any basis to disregard this portion of Paragraph 19 of Plaintiff's statement of disputed facts.[83]

---

[79] Rec. Doc. No. 36-1, p. 5.

[80] *Id.* ("Rick Guba, as Amedee's second line supervisor was customarily and habitually involved with any personnel decision involving Amedee.  As such he was copied by the plan General Manager Ryan Schmidt 'For Discussion Monday' on an email sent by Plaintiff Leah Amedee requesting reconsideration of her termination.  Exhibit 25, Shell 798.  The other individuals copied on this correspondence included Chad Mason and Monica Hagar in Human Resources.").

[81] The Court notes that Plaintiff attempts to authenticate the bottom portion of Exhibit 25, the initial email from Plaintiff, in her declaration at paragraph 28.  However, it is the subsequent, forwarding email upon which Plaintiff relies in Paragraph 19, which has not been authenticated.  Rec. Doc. No. 36-2, p. 9. *See Cantor v. Wachovia Mortg., FSB*, 641 F.Supp.2d 602, 609 (N.D. Tex. July 6, 2009)("The e-mail is unauthenticated, and constitutes inadmissible hearsay….").

[82] Rec. Doc. No. 36-1, p. 5.

[83] *See U.S. v. Jimenez Lopez, supra.*

51599

The final sentence of Paragraph 19 relies upon "Exhibit 3, Deposition of Richard Guba ["Guba"], p. 61 ll. 1-6".[84]  The cited deposition testimony reads:

> Q.  Well, let me ask it this way:  Did you have any communication in your recollection at all with Mr. Harlin Hart, the PTL supervisor, in the days prior to Ms. Amedee's termination?
> A.  Yes, sir.  I don't remember the specifics, but yes, I did.[85]

Exhibit 3, quoted in its entirety above, only supports that Guba communicated with Hart in the "days prior" to Plaintiff's termination.  The deposition testimony does not reflect that this communication occurred "on or about the time Harlan Hart wrote the email relied upon by Shell".  Therefore, while Exhibit 3 is proper summary judgment evidence, the discrepancies between the statement and the cited evidence cannot be resolved by the Court on summary judgment.  The Court will not resolve factual disputes on summary judgment.[86]  The Court will not disregard the last portion of Paragraph 19.

Paragraph 22 of *Plaintiff's Statement of Disputed Material Facts* relies solely upon "Plaintiff's Verified First Amended Complaint ¶ 27".[87]  Defendant challenges Plaintiff's reliance on the allegations in her *Complaint* as being inappropriate "evidence" for summary judgment purposes.  The Court agrees.  "In the context of a motion for summary

---

[84] Rec. Doc. No. 36-1, p. 5. ("On or about the time Harlan Hart wrote the email relied upon by Shell, Hart, who received Amedee's call after the accident, was in communication with Rick Guba.  Exhibit 3, Deposition of Richard Guba, p. 61 ll. 1-6. [Defendant's Material Fact 18].").
[85] Rec. Doc. No. 36-5.
[86] *See Overman v. City of Baton Rouge*, No. 13-614, 2015 WL 224805, *3 (M.D. La. Jan. 15, 2015).
[87] Rec. Doc. No. 36-1, pp. 5-6 ("Amedee requested and obtained a largely sedentary position on the Control Board in the AO/ID production room in October 2015.  Her new assignment was to begin in January 2016.  In October 2015 Plaintiff requested a $100 chair which would have made it possible for her to work for 12-hour shifts and possible overtime and remain seated.  When no action was taken, Plaintiff requested the chair in writing by email, several times.  Shell refused to engage Plaintiff in dialog.  The requested chair was neither ordered nor forthcoming; instead Plaintiff's supervisor Rick Guba, on or about April 24, 2016 caused Plaintiff to be terminated on the pretextual reason that she failed to call in on one occasion when she saw a doctor for treatment.  Plaintiff's Verified First Amended Complaint ¶ 27.").
51599

judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his Complaint in opposing a motion."[88]  Therefore, the Court will not consider Paragraph 22 of Plaintiff's statement of disputed facts.

### 2. Plaintiff's declaration

Defendant next challenges paragraphs of Plaintiff's declaration.[89]  First, Defendant challenges Paragraphs 22 and 35 of Plaintiff's declaration[90] because the attestations are not within Plaintiff's own personal knowledge.[91]  "Rule 56(e) requires declarations offered in support of summary judgment to be based on personal knowledge."[92]  Rule 602 of the Federal Rules of Evidence further requires a submitting party to lay proper foundation that witnesses have personal knowledge of the matter about which they will testify.  "[A] court may strike any affidavit that is not based on personal knowledge."[93]  To demonstrate personal knowledge, an affidavit "must include enough factual support to show that the affiant possesses that knowledge."[94]

Plaintiff attests at paragraph 22:

> I have worked in training status on the Control Board.  As long as an employee works twelve hours in a training status, it does not matter if you occasionally come in late.  An employee in a training status is allowed to

---

[88] *Foster v. Coody*, 2010 WL 1752131, *4 (M.D. La. Mar. 29, 2010)(citing *Celotex Corp.*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *See also Dragna v. A&Z Transp., Inc.*, 2015 WL 729844, *2 (M.D. La. Feb. 19, 2015)("the plaintiff [can]not rest on his allegations to get to a jury without any 'significant probative evidence tending to support the complaint"); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence – not argument, not facts in the complaint – will satisfy the burden.")(citing *Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).

[89] Rec. Doc. No. 42, p. 2.

[90] Rec. Doc. No. 36-2, pp. 6-7 and 10-11.

[91] Rec. Doc. No. 42, p. 2.

[92] *Bright v. Ashcroft*, 259 F.Supp.2d 494, 498 (E.D. La. Feb. 11, 2003)(citing Fed.R.Civ.P. 56(e); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992)).

[93] *Bright,* 259 F.Supp.2d 494, 498 (5th Cir. 2003)(citing *Akin*, 959 F.2d at 530; *CMS Indus., Inc. v. L.P.S. Int'l, Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981)).

[94] *Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 374 (5th Cir. 2007).

51599

make up the time. In a training status an employee just trained and was not responsible for operations or making relief of another employee.[95]

After reviewing the declaration, the Court finds that Plaintiff attempted to lay the proper foundation to support her statements. She attests that she has worked in training status on the Control Board, which, presumably, provided her with the background to attest to the quoted matters. However, while the attestations appear to be based on personal knowledge (given Plaintiff's work history and experience), the statement invites the Court to make a credibility determination as to whether Plaintiff's opinions (*i.e.*, "it does not matter if you occasionally come in late"; "allowed to make up the time"; "was not responsible for operations or making relief of another employee") are well-founded and based in fact. As stated previously, it is not proper for a Court to make credibility determinations and make findings of fact on summary judgment. Therefore, the Court declines to consider Paragraph 22 of Plaintiff's declaration as a statement of undisputed fact.

Paragraph 35 of Plaintiff's declaration contains statements regarding Guba, a supervisor to Plaintiff's direct supervisor, and the scope of his duties as supervisor.[96] After reviewing Paragraph 35 of the declaration, the Court finds that Plaintiff did not lay the

---

[95] Rec. Doc. No. 36-2, pp. 6-7.
[96] Rec. Doc. No. 36-2, pp. 10-11. ("Rick Guba was Production Supervisor over the ID section of the AOID unit. All in all, he supervised over 80 employees. He was the immediate supervisor of my immediate supervisor Desi Grover and it was common knowledge that Guba could not rate and recommend bonuses for Grover. Guba was instrumental and involved with each and every personnel decision which happened in the AOID unit. He was involved in the day to day approval and disapproval of time off. He instituted discipline and decided when to recommend employees he supervised for discipline. For Guba not to have been consulted when it came to the termination of one of the employees he supervised would have been unheard of and anomalous.").
51599

proper foundation to evidence that this affiant possesses personal knowledge about this subject.[97]  The Court will not consider Paragraph 35 of the declaration.

Defendant challenges Paragraphs 12 and 29 of the declaration because these attestations contain argument rather than fact.[98]  On review of Paragraph 12[99] and Paragraph 29,[100] the Court agrees that these attestations contain unsupported argument and opinion and are not statements of fact.[101]  For the reasons set forth herein, these paragraphs will not be considered by the Court.

Defendant objects to Paragraph 28 of the declaration as it contradicts statements in Plaintiff's "disputed facts" or prior deposition testimony.[102]  Defendant specifically compares Paragraph 28 of the declaration to Paragraph 22 of Plaintiff's statement of disputed facts.  Defendant does not direct the Court to deposition testimony that contradicts the declaration; therefore, the Court is not in a position to determine whether attestations and prior testimony are conflicting.  Specifically, Defendant argues that Paragraph 28 of the declaration reflects a termination date of "April 8th" and "April 5th", representing conflicting dates within the same paragraph,[103] and Paragraph 22 of the statement of contested facts reflects a termination date of "April 24, 2016".[104] Paragraph 22 of the statement of contested facts has previously been determined to be disregarded

---

[97] *Bright, supra*; Fed. Rule of Evid. Rule 602.
[98] Rec. Doc. No. 42, p. 2.
[99] Rec. Doc. No. 36-2, p. 3. ("As a result of my unnecessary 'return to work' issue, brought about by Guba and Grover's fabricated story about my inability to open valves, I was subjected to a number of medical evaluations by Shell and was prevented from returning to work as ordered by my treating physician.  See Contested Material Facts, ¶ 4.").
[100] Rec. Doc. No. 36-2, p. 10. ("I was finally terminated by Shell on or about April 5, 2016, for reasons which were, and are, objectively false, while I was on protected FMLA leave.").
[101] *See Goodman, supra*, and the internal citations.
[102] Rec. Doc. No. 42, p. 2.
[103] Rec. Doc. No. 36-2, p. 9.
[104] Rec. Doc. No. 36-1, p. 6.

51599

by the Court for the reasons previously stated. Regarding the conflict within Paragraph 28, the precise date is unimportant to the Court's analysis.

Defendant challenges Paragraphs 3 and 13 of the declaration on the grounds that they are not material to the issues in this case.[105] Defendant does not offer any grounds or authority to support its challenge to these paragraphs other than a brief statement that the attestations are not material to the present motion.[106] Based on these grounds alone, the Court will not disregard these paragraphs.

### 3. *Other miscellaneous exhibits*

In addition to the statements, declaration, e-mails, and medical records ruled upon herein and based upon the reasoning and legal authority previously stated, the Court addresses the remaining exhibits attached to Plaintiff's opposition:

- Rec. Doc. No. 36-5, 36-28, deposition testimony, *admissible* as proper summary judgment evidence;

- Rec. Doc. No. 36-6, e-mail to Plaintiff authenticated by Plaintiff, *admissible* as proper summary judgment evidence;

- Rec. Doc. No. 36-7, 36-13 through 36-20, 36-23, 36-25, 36-26, 36-36 through 36-39, 36-42, 36-43, unauthenticated documents or communications, *inadmissible*, hearsay evidence;

- Rec. Doc. No. 36-8, declaration of Chad Mason, *admissible* as proper summary judgment evidence;

- Rec. Doc. No. 36-41, unauthenticated photograph, *inadmissible*, hearsay evidence; and

- Rec. Doc. No. 36-45, unauthenticated calendar, *inadmissible*, hearsay evidence.

---

[105] Rec. Doc. No. 42, p. 2.
[106] *See U.S. v. Jimenez Lopez, supra.*
51599

## C. Family and Medical Leave Act ("FMLA")

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."[107]  The statute guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave relates to an employee's serious medical condition.[108]  Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions."[109]  An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1).[110]

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.[111]  The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.[112]  An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2).  "To prove FMLA retaliation, the employee must demonstrate: '(1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the

---

[107] *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008)(citing 29 U.S.C. § 2601(b)(2)).
[108] 29 U.S.C. § 2612(a)(1).
[109] *Smith v. E. Baton Rouge Parish Sch. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006)(citing 29 U.S.C. § 2614(a)(1)).
[110] *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).
[111] 29 U.S.C. § 2615(a)(1).
[112] 29 U.S.C. § 2615(a)(2).
51599

FMLA.'"[113]   Plaintiff claims that Defendant interfered with the exercise of FMLA rights under 29 U.S.C. § 2615(a)(1) and failed to restore Plaintiff to an equivalent position under 29 U.S.C. § 2614(a)(1) of the FMLA.[114]   The Court addresses each claim below.

### 1. FMLA Interference

To establish a *prima facie* interference case, a plaintiff must show that: (1) she was an eligible employee, (2) the Defendant was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) the Defendant denied her the benefits to which she was entitled under the FMLA.[115]   At issue is prong 5, did Shell deny the Plaintiff FMLA benefits to which she was entitled?

The Court finds that the March 11, 2016, vehicle accident and arrest which prompted Plaintiff to call in sick and not fulfill her scheduled overtime shift was the final "occurrence" which prompted Defendant to terminate Plaintiff's employment with Shell.[116] There is no evidence in the record that supports a finding that Plaintiff sought approval for FMLA leave for or beginning March 11, 2016.   Rather, the record evidence demonstrates that Plaintiff was neither on FMLA leave, nor requested FMLA leave, on March 11, 2016.  It was not until March 14 or 15, 2016, the exact date is not clear from

---

[113] *Acker v. GM, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017)(quoting *Mauder v. Metro. Transit Auth. Of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)).
[114] Rec. Doc. No. 7, ¶¶ 22.
[115] *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); *see also Burris v. Brazell*, 351 Fed.Appx. 961, 963 (5th Cir. 2009)(*per curiam*)("To make a *prima facie* case for interference with FMLA rights, [the plaintiff] must first demonstrate that she took leave that was protected under the FMLA.")(citing *Mauder v. Metro. Transit Auth. Of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006)).
[116] Rec. Doc. No. 31-4, Dec. of Chad Mason, pp. 4-5, ¶¶ 14-16.
51599

the record evidence, that Plaintiff sought FMLA leave.[117]   The leave continued until

approximately March 30, 2016.  Neither party disputes that FMLA leave was from March

14, 2016 to March 30, 2016.[118]   The decision to terminate Plaintiff was made before

Plaintiff's FMLA leave expired (March 30, 2016), but Defendant claims that it was unable

to reach Plaintiff.  Regardless, the first termination letter was issued March 30, 2016, and

the second was issued April 5, 2016. [119]

      The issue is whether Defendant improperly interfered with Plaintiff's FMLA rights

by terminating her employment during a time of leave.  The law is clear that the fact that

Plaintiff was on leave when she received her termination letter is not an *ipso facto*

interference with FMLA rights.[120]   Simply being on FMLA leave did not insulate Plaintiff

from being lawfully terminated.

      Relying upon *Serio v. Jojo's Bakery Restaurant*,[121] the Fifth Circuit Court of

Appeals in *Grubb v. Southwest Airlines* found:

> As a general proposition, "[a]n employee who requests or takes protected
> leave under the FMLA is not entitled to any greater rights or benefits than
> he would be entitled to had he not requested or taken leave."[122]   This
> principle is not only reflected in FMLA regulations on reinstatement, *see* 29
> C.F.R. § 825.216(a), but is also a matter of common sense.[123]   Moreover,
> at least for purposes of the FMLA – if not the ADA – one can be fired for
> poor performance even if that performance is due to the same root cause

---

[117] Rec. Doc. No. 36, p. 14.  Plaintiff represents that her FMLA was "certified" on March 15, 2016.  Defendant does not dispute this.  There is no evidence or representation in the record that leave commenced or was requested prior to March 14, 2016.

[118] Rec. Doc. No. 31-3, Depo. of Amedee, pp. 191-194

[119] *Id.*; Rec. Doc. No. 31-8.

[120] *See Varise v. H & E Healthcare, LLC*, No. 10-666, 2012 WL 5997202 (M.D. La. Nov. 30, 2012)(citing *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050-51 (8th Cir. 2006)(citing *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005)). *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682-83 (5th Cir. 2013).

[121] *Serio v. Jojo's Bakery Restaurant,* 102 F.Supp.2d 1044 (S.D.Ind. 2000).

[122] *Serio*, 102 F.Supp.2d at 1051.

[123] *See Throneberry*, 403 F.3d at 977 (describing as 'uncluttered logic' its holding that 'an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights').

51599

as the need for leave.[124]   Therefore, given that [defendant's] termination of [plaintiff] was otherwise appropriate, any right to leave would have been extinguished by [defendant's] exercise of that prerogative.[125]

In *Nero v. Industrial Molding Corp.*,[126] the plaintiff was not restored to his position after completing FMLA leave.   The jury determined that the employer made the decision to terminate Nero's employment after he took FMLA leave.   The Fifth Circuit in *Nero* stated, "[b]ecause the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, *regardless of the intent of the employer.*"[127]

The Fifth Circuit then clarified its ruling in *Nero* in the opinion of *Shirley v. Precision Castparts Corp.*:

> Our opinion in *Nero v. Industrial Molding Corp.* is not to the contrary.   There, having accepted that § 2614(a)(3) provides an employee only those rights to which he would have been entitled had he not taken leave, we noted that, because reinstatement was an FMLA entitlement, 'the employee [was] due the benefit if the statutory requirements [were] satisfied, *regardless of the intent of the employer.*'   A few district courts have interpreted the italicized phrase as imposing a strict liability standard, requiring employers, in all circumstances, to reinstate employees after returning from FMLA leave. These courts misread *Nero*.   It is true that an employer may not fail to reinstate an employee following his return from FMLA leave, *but only if the statutory requirements have been satisfied.*   Among those requirements is one dictating that an employee must actually be entitled to the position to which he seeks reinstatement, 29 U.S.C. § 2614(a)(3); and an employer may challenge that entitlement by offering evidence that the employee would have lost his position even had he not taken FMLA leave, 29 C.F.R.

---

[124] *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002)(observing that "the FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken.").

[125] *Grubb v. Southwest Airlines*, 296 Fed.Appx. 383, 391 (5th Cir. 2008).

[126] *Nero v. Industrial Molding Corporation*, 167 F.3d 921 (5th Cir. 1999).

[127] *Matamoros v. Ysleta Independent School Dist.*, 916 F.Supp.2d at 723, 727 (W.D. Tex. 2012)(citing *Nero*, 167 F.3d at 926-27)(internal citations omitted)(emphasis added).   Based on this statement from the Fifth Circuit, the *Matamoros* plaintiff argued that intent is irrelevant, and the employer is legally required to restore an employee to his previous position after returning from FMLA leave.   The *Matamoros* defendant disagreed with this interpretation, arguing that the employer's intent matters and that an employer may deny reinstatement if it can prove that a plaintiff's employment would have ended regardless of the FMLA leave. The *Matamoros* court found the defendant's argument persuasive but found that it was bound to follow Fifth Circuit precedent in *Nero*.   *Matamoros*, 916 F.Supp.2d at 727. The Fifth Circuit noted the *Grubb* decision but declined to follow it because it was not published and "not precedent".   *Matamoros* at n. 6.

51599

§ 825.216(a). Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had already been extinguished – for legitimate reasons unrelated to his efforts to secure FMLA leave – does not violate the Act. Although we might have been clearer in *Nero*, we in fact considered the employer's reasons for terminating the employee, which, of course, would have been unnecessary had those reasons been irrelevant.[128]

The reasoning above is equally applicable in the present case. An employer may challenge the employee's "entitlement" to reinstatement by offering evidence that the employee would have lost his/her position even had he/she not taken FMLA leave.[129] Here, Defendant challenges Plaintiff's position of entitlement to reinstatement and has offered evidence that Plaintiff would have lost her position even if she had not taken FMLA leave commencing March 14 or 15, 2016. Defendant offered supporting evidence that the decision to terminate Plaintiff was made because of, and immediately after, the March 11, 2016, car accident, arrest, and inability to appear for a scheduled overtime shift. Defendant offered summary judgment evidence that Plaintiff would have been terminated regardless of subsequent FMLA leave.[130]

Defendant cites to *Varise v. H&E Healthcare, LLC*,[131] arguing that the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.[132] *Varise* involved a plaintiff who was not restored to his former position following FMLA leave because the position itself was eliminated. An employer is not required to restore

---

[128] *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682-83 (5th Cir. 2013).
[129] *Id.*
[130] Rec. Doc. No. 31-4, pp. 5-6; Rec. Doc. No. 31-8.
[131] *Varise v. H&E Healthcare, LLC*, No. 10-666, 2012 WL 5997202 (M.D. La. Nov. 30, 2012).
[132] Rec. Doc. No. 31-1, p. 15, n. 73 (citing *Varise*, at *3).

51599

an employee to a position when the position has been eliminated.[133]  Although the facts

in this case are distinguishable, the reasoning nonetheless applies.  Approval of FMLA

leave does not create the guarantee of employment.  FMLA was intended to guarantee

the ability to take leave without risk of loss of employment.  While the taking of FMLA

leave should not expose an employee to job loss owing to the taking of leave, the leave

itself does not create a job guarantee where factors unrelated to the leave affect continued

employment.[134]

Based on the foregoing, the Court grants summary judgment in favor of the

Defendant on Plaintiff's FMLA interference claim.

### 2.  Retaliation or Discrimination

Plaintiff also claims that Defendant failed to restore Plaintiff to an equivalent

position under 29 U.S.C. § 2614(a)(1) of the FMLA.[135]  Plaintiff pleads this as a separate

claim from her FMLA interference claim although the argument is, essentially, the

same.[136]  Defendant refers to this claim as Plaintiff's claim of discrimination under the

---

[133] *Id.*, *3 (internal citations omitted).

[134] *See Johnson v. Roehl Properties of Indiana LLC*, No. 10-0081, 2012 WL 1144027, *6 (N.D.Ind. 2012)(holding that there is no right to continual employment while on FMLA leave and so there is no interference claim when there has been a termination and that this claim was 'really "only a retaliation claim masquerading" as an interference claim.')(citing *Dressier v. Community Service Communications, Inc.*, 275 F.Supp.2d 17, 25 (D.Me. 2003)(holding that only a retaliation claim is available when the employee on FMLA leave is terminated)); *Mascioli v. Arby's Restaurant Group, Inc.*, 610 F.Supp.2d 419, 433 (W.D. Pa. 2009); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (discussing the relationship between FMLA interference and FMLA retaliation claims: '[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights.  However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.")(citing *Throneberry*, 403 F.3d at 980).

[135] Rec. Doc. No. 7, ¶ 22.

[136] Rec. Doc. No. 36, pp. 17-22.

51599

FMLA.[137]   Claims for failure to restore to an equivalent position are often treated as retaliation or discrimination claims.[138]

Following FMLA leave, an employer ordinarily must restore the returning employee to the same position previously held or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[139]   An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1).[140]   The FMLA also "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights."[141]   An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2).

Summary judgment for a retaliation claim under the FMLA is subject to the *McDonnell Douglas* test.[142]   To establish a *prima facie* case for FMLA retaliation, the Plaintiff must show that: (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) she either was treated less favorably than a similarly situated employee who had not requested leave or the adverse decision was made because she took FMLA leave.[143]

---

[137] Rec. Doc. No. 31-1, pp. 8-12.  However, s*ee Mauder,* 446 F.3d at 580 (explaining that the FMLA contains two distinct provisions: entitlements or substantive rights (such as the right to return to the same position after an absence), and proscriptive rights (protecting employees from retaliation or discrimination)); *Haley,* 391 F.3d at 649 (A claim to restore the employee to the same position is a substantive FMLA right, and claims for violation of this right invokes entitlement or interference theories brought under § 2615(a)(1)).
[138] *Shirley, supra.*
[139] 29 U.S.C. § 2614(a)(1).
[140] *Haley*, 391 F.3d at 649.
[141] *Bocalbos v. Nat'l W. Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir. 1998).
[142] *Varise*, at *2.
[143] *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).
51599

It is undisputed that Plaintiff has satisfied the first two elements of her *prima facie* case: Plaintiff was protected under the FMLA, and she suffered an adverse employment action when she was terminated.[144] The issue is whether Shell terminated Amedee because she sought protection under the FMLA.

An employee must "show 'there is a causal link' between FMLA-protected activity and the adverse action."[145] Neither the Fifth Circuit, nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies to FMLA retaliation claims.[146] However, "the Supreme Court has held that in order to establish the causal link, temporal proximity, if offered by itself, must be 'very close.'"[147] Here, the basis for Defendant's decision to terminate Plaintiff occurred on March 11, 2016; Plaintiff began approved FMLA leave on March 14 or 15, 2016; and while the end date of Plaintiff's FMLA leave is unclear from the record, it is clear that she remained on FMLA leave at the time of termination, as evidenced by letters dated March 30, 2016 and April 5, 2016. This is "very close" according to the applicable standards and demonstrates a causal link to establish a *prima facie* case of FMLA retaliation.

Once the *prima facie* showing is made, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the employment decision.[148] A plaintiff must then show either: (1) that the employer's reason is a pretext for

---

[144] *See, e.g., Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013)("It is clear that an adverse employment action occurred here – Royal was fired.").

[145] *Acker v. GM, LLC*, 853 F.3d 784, 790 (5th Cir. 2017)(quoting *Mauder* , 446 F.3d at 583.

[146] *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016)(citations omitted).

[147] *Leal v. BFT, Ltd. P'ship*, 423 Fed.Appx. 476, 479 (5th Cir. 2011)(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(*per curiam*)(noting that the time periods of three and four months had been found by the appellate courts to be "very close" and holding that a period of twenty months was not "very close")).

[148] *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

51599

discrimination; or (2) that the employer has a discriminatory or retaliatory motive in addition to a legitimate reason, or mixed motives.[149]  If the employee demonstrates that the employer had a mixed motive, then the employer must show that it would have conducted the same employment action regardless of the discriminatory motivation.[150]

Defendant argues that it is "undisputed that on March 10, 2016, Amedee had a meeting with her supervisors in which she was warned about her excessive non-FMLA absences and her failure to appropriately call off of work".[151]  Plaintiff was cautioned that further violations could result in her termination.[152]  It is undisputed that the same day as Plaintiff's most recent counseling on her absences, she consumed alcohol, wrecked her truck, was arrested for her second DWI, causing her to call-in "sick" and not make her overtime shift of 4:30 a.m. on March 11, 2016.[153]  Defendant claims that these facts alone "unquestionably" equate to a legitimate, non-discriminatory reason for termination.[154]

The burden to articulate a legitimate nondiscriminatory reason for termination "is one of production, not persuasion, it can involve no credibility assessment".[155]  Further, the Fifth Circuit has held that excessive absenteeism and/or a failure to show up for work is a legitimate, nonretaliatory reason for the termination of employment.[156]  Louisiana

---

[149] *Id.*
[150] *Id.*
[151] Rec. Doc. No. 31-1, p. 9 (citing Rec. Doc. No. 31-4, p. 4, ¶ 13; Rec. Doc. No. 31-6).
[152] Rec. Doc. No. 31-5; Rec. Doc. No. 31-6.
[153] Rec. Doc. No. 31-4; Rec. Doc. No. 31-7; Rec. Doc. No. 31-3, Depo. of Amedee, pp. 181-84; Rec. Doc. No. 36-2.
[154] Rec. Doc. No. 31-1, p. 9.
[155] *Talbott v. Time Warner Entertainment-Advance/Newhouse Partnership,* 2013 WL 152179, *5 (W.D. Tex. Jan. 11, 2013)(citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)(citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))).
[156] *See Trautman v. Time Warner Cable Texas, LLC,* 756 Fed.Appx. 421 (5th Cir. Dec. 12, 2018); *Bell v. Dallas Cnty.,* 432 F.App'x 330, 334 (5th Cir. 2011)(affirming summary judgment where an employee was discharged "because his non-FMLA absences were excessive" and "grounds for termination" under the employer's attendance policy); *Edmonsond v. Bookwood Cmty.,* 114 F.App'x 148, 148-49 (5th Cir. 2004); 51599

District Courts have made the same finding.[157]  Here, the summary judgment evidence and record support that: Plaintiff had numerous non-FMLA approved absences, early departures, or late arrivals;[158] Plaintiff was made aware of these instances;[159] although Plaintiff disputed some of these instances, the record does not reflect that she resolved her dispute by providing the required information to the Reed Group and having the instances converted to approved leave;[160] Plaintiff contends some of these instances were due to back pain, but the record evidence does not reflect that this was provided to and considered by the Reed Group in accordance with the policies and procedures;[161] Shell followed its internal procedures for a formal disciplinary process, which Plaintiff does not dispute;[162] and Plaintiff's final unapproved failure to report to her shift was one day following a counseling for excessive absenteeism.  Absent from the record is any evidence of a connection between a retaliatory animus for Plaintiff's prior FMLA leave to the subject termination based on recorded absences, early departures, late arrivals, and discussion in accordance with the Defendant's formal disciplinary process.[163]  The Court

---

*Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 335 (5th Cir. 2005); *Williams v. Roy O. Martin Lumber Co.* LLC, 2002 WL 31319337, *4 (5th Cir. 2002).

[157] *See, e.g., Hypes v. First Commerce Corp.,* 3 F.Supp.2d 712, 723 (E.D. La. Aug. 27, 1996)("[Plaintiff] was dismissed because of excessive absenteeism.  This reason is legitimate and veils no discriminatory intent on the part of [Defendant].").

[158] Rec. Doc. No. 31-1, pp. 3-4 (Dec. of Chad Mason, Rec. Doc. No. 31-4, p. 3, ¶ 9; Rec. Doc. No. 31-6).

[159] Rec. Doc. No. 31-5; Rec. Doc. No. 31-6.

[160] *See* pp. 2-4 and footnotes 10-21 herein.

[161] The record evidence is void of any certification or acknowledgement by the Reed Group of these instances of alleged back pain and converting to approved leave.

[162] Rec. Doc. No. 31-1, pp. 4-6 (Dec. of Chad Mason, Rec. Doc. No. 31-4, pp. 3-4, ¶¶ 9-13; Rec. Doc. No. 31-5; Rec. Doc. No. 31-6); See Rec. Doc. No. 36, p. 9.

[163] *See, e.g., McKenna v. Liberty Mut. Group, Inc.,* 468 Fed.Appx. 413, 417 (5th Cir. 2012); *Wiseman v. New Breed Logistics, Inc.,* 72 F.Supp.3d 672, 678 (N.D. Miss. Dec. 18, 2014).

51599

finds that Defendant has presented summary judgment evidence of a legitimate non-discriminatory reason for Plaintiff's termination.[164]

Plaintiff argues that her retaliation claim should be analyzed "under the mixed-motive framework".[165] Plaintiff argues that this analysis "permits a finding of discrimination despite the co-existence of legitimate motives".[166] However, Plaintiff's argument and showing based on proper summary judgment evidence ends here. Plaintiff does not articulate the alleged mixed-motives. Plaintiff's burden is to demonstrate with summary judgment evidence that discrimination was a motivating factor in her termination, a retaliatory animus.[167] Plaintiff seems to admit that Shell had a legitimate reason for terminating her employment, but that Shell also had discriminatory motives as well. The Court is left at this juncture in Plaintiff's argument guessing what that discriminatory motive was and what evidence supports such a finding.[168]

Plaintiff argues in a separate section of her opposition that Guba played a role in her termination that was somehow improper.[169] Plaintiff contends that, after she received

---

[164] Rec. Doc. No. 31-3, Depo. of Amedee, pp. 169-171; Rec. Doc. No. 31-7. See Rec. Doc. No. 36, pp. 12-13; Rec. Doc. No. 36-2, Dec. of Amedee, p. 6, ¶ 18.

[165] Rec. Doc. No. 36, p. 20.

[166] *Id.* (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-102); *Richardson*, 434 F.3d at 332-33).

[167] *Allain v. Board of Supervisors of Univ. of La. System*, 81 F.Supp.3d 502, 511 (W.D. La. Jan. 22, 2015)(citing *Richardson*, 434 F.3d at 333).

[168] Rec. Doc. No. 36, pp. 20-21 (where Plaintiff sets forth the legal support for arguing a mixed-motives theory, as opposed to pretext, but provides no explanation, argument, or evidence of same). *See Carroll v. Sanderson Farms, Inc.,* 2012 WL 3866886, *11 (S.D. Tex. Sept. 5, 2012)("it is well established that 'discrimination laws [are not] vehicles for judicial second-guessing of business decisions'"; "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."; "In sum, [defendant] states that there is ample evidence that the discharge decision was supported by legitimate nondiscriminatory reasons, and since there is no competent evidence of pretext, Plaintiff's subjective belief that she was discriminated against based on her disability and her FMLA leave is insufficient to create a genuine issue of material fact for trial.")(citing *Walton v. Bisco Indus.,* 119 F.3d 368, 372 (5th Cir. 1997); *Perez v. Region 20 Educ. Serv. Center*, 307 F.3d 318, 325 (5th Cir. 2002)).

[169] Rec. Doc. No. 36, pp. 21-22.

51599

her notice of termination, she issued an email appealing this decision.[170]  Ryan Schmidt ("Schmidt"), Guba's supervisor and the AOID Unit Manager, then forwarded Plaintiff's email appeal to Mason, Monica Hagar ("Hagar") in Human Resources, and Guba, allegedly stating that Plaintiff's email would be "discuss[ed] Monday".[171]  Plaintiff suggests that this email exchange and presumed/speculative discussion raises a fact issue of whether her points of reconsideration were, in fact, raised and considered and whether Guba had influence over this decision.[172]  Plaintiff then submits that a reasonable factfinder "could conclude that since the General Manager of the Geismar plant referred Amedee's request for a reconsideration of her termination only to Guba, his two senior Human Resources personnel Chad Mason and Monica Hagar on the question of Amedee's Investigation Findings, that Guba must have played a part in the 'discussion Monday'".[173]  Plaintiff does not elaborate on this conclusory statement, offer supporting legal authority, or offer any evidence other than the email appeal.[174]

The burden shifted to Plaintiff to demonstrate through summary judgment evidence that Defendant's reason for termination was a pretext or that the mixed-motives theory applied.[175]  Plaintiff does not articulate how this theory applies.[176]  On summary judgment, the Court is not required to assume a party's argument or survey the record for evidence

---

[170] *Id.* (citing Rec. Doc. No. 36-27).
[171] *Id.*
[172] Rec. Doc. No. 36, p. 21.
[173] *Id.*
[174] Rec. Doc. No. 36, p. 22 (citing Rec. Doc. No. 36-27).
[175] *See, e.g., Swenson v. Schwan's Consumer Brands North America, Inc.*, 500 Fed.Appx. 343, 345 (5th Cir. 2012)(applying this shifting burden analysis in an age discrimination context); *Gordon v. Peters*, 2008 WL 162866, *2 (5th Cir. 2008)(applying this shifting burden analysis in a gender discrimination context); *Gillaspy v. Dallas Independent School Dist.*, 278 Fed.Appx. 307, 312-13 (5th Cir. 2008); *Morrison v. Dallas County Community College*, 273 Fed.Appx. 407, 409-10 (5th Cir. 2008); *Breeding v. U.S. Dept. of Interior*, 2015 WL 1809977, *2 (E.D. La. Apr. 21, 2015).
[176] Rec. Doc. No. 36, pp. 21-22.

51599

and argument suggesting Plaintiff's position and support for same. It appears that Plaintiff argues that Guba's involvement in the post-termination discussion improperly influenced any decision, action or inaction by Shell; however, Plaintiff does not explain how Guba's influence, assuming same, impacted Plaintiff's termination in a discriminatory or retaliatory way. Plaintiff argues a "cat's paw theory of liability", citing to *Zamora v. City of Houston*; however, Plaintiff goes no further – she states the theory but does not apply it to this matter or engage in any analysis.[177] Plaintiff also does not dispute her absenteeism;[178] the procedure followed for her termination; or specifically articulate how the presumed post-termination discussion is connected to her termination, a retaliatory animus, or reinstatement to her former position.[179] Simply put, Plaintiff has failed to present summary judgment evidence to demonstrate a genuine issue of material fact regarding her allegation that there were mixed motives for her termination.[180] For these reasons, the Court finds that Plaintiff has failed to carry her burden, and Plaintiff's retaliation claim fails.

Additionally, Plaintiff's FMLA retaliation claim fails for the same reasons that her interference claim failed, as articulated herein.

For these reasons, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation or discrimination claim under the FMLA.

---

[177] Rec. Doc. No. 36, p. 21 (citing *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir.2015). *See Pete v. City of Houston*, 719 Fed.Appx. 334, 339 (5th Cir. 2018)(where the court agreed with the district court's conclusion but criticized the analysis for failing to address the "cat's paw theory of liability"; the court conducted a full analysis under *Zamora*, unlike Plaintiff in the matter before the Court).

[178] Plaintiff disputed some of the specific dates of absenteeism or reasons for same but offered no reliable evidence to support her contention. She does not dispute that she frequently missed work.

[179] *See Power Equities, Inc. v. Atlas Telecom Services-USA, Inc.*, 2007 WL 43843, *4 (N.D. Tex. 2007)(where the defendant "has woefully failed to meet its burden" where it offered no legal authority, no "scholarly argument", and no evidence).

[180] *See Higgins v. Lufkin Industries, Inc.*, 633 Fed.Appx. 229, 232-34 (5th Cir. 2015).

51599

### 3. Fitness-for-Duty Certification

In her opposition, Plaintiff argues facts relevant to a fitness-for-duty certification claim under provisions of the FMLA.[181]   However, Plaintiff does not plead a claim regarding improper fitness-for-duty certification in her *Complaint.*[182]  Defendant does not move for summary judgment on a fitness-for-duty certification claim.[183]  In fact, Defendant argues in reply to Plaintiff's opposition that Plaintiff has not alleged any claims related to an impermissible fitness to work examination in her *Complaint.*[184]  The law is well-settled that a plaintiff may not rely on new claims raised for the first time in response to a motion for summary judgment.[185]   The Court will not consider any facts, offered exhibits, or argument related to Plaintiff's fitness-for-duty certification claim that is raised for the first time in her opposition to Defendant's motion for summary judgment.

## D. Americans with Disabilities Act ("ADA")

Plaintiff also claims that she was subjected to discrimination based on a disability that Defendant perceived Plaintiff to have.   The *McDonnell Douglas* burden-shifting analysis set forth above also applies to Plaintiff's disability discrimination claim under the ADA.[186]  "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [she] was discriminated against because of [her] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell*

---

[181] Rec. Doc. No. 36, pp. 5-9.

[182] Rec. Doc. No. 7.

[183] Rec. Doc. No. 31-1.

[184] Rec. Doc. No. 42, p. 9.

[185] *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

[186] *Robertson v. Corval Constructors, Inc.*, 2015 WL 1650367, *4 (M.D. La. Apr. 14, 2015).

51599

*Douglas Corp. v. Green*, a Title VII case."[187]   The analysis first requires the plaintiff to establish a *prima facie* case of discrimination.[188]   To prove a *prima facie* case for a violation of the ADA, a plaintiff must show that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the job position, and (3) she was subjected to an adverse employment action on account of his disability or perceived disability.[189]

> 1.  *Disability Discrimination*

## a. Prima Facie Case

To prove a *prima facie* case for a violation of the ADA, a plaintiff must show that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the job position, and (3) she was subjected to an adverse employment action on account of his disability or perceived disability.[190]

> i.   *Disabled or Regarded as Disabled*

Under the ADA, an individual is regarded as disabled if she has been subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[191]   Employers may "defend against a claim of regarded as coverage by proving the perceived impairment actually is 'both transitory and minor.'"[192]

---

[187] *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (internal citation omitted).
[188] *Id.*
[189] *Id.* at 697.  *See also Suggs v. Central Oil of Baton Rouge, LLC*, 2014 WL 3037213, *5 (M.D. La. July 3, 2014).
[190] *Id.* at 697.  *See also Suggs*, at *5.
[191] 41 U.S.C. § 12102(3)(A).
[192] *Suggs,* at *5; *Kennedy v. Parkview Baptist School, Inc.,* 2014 WL 6959940, *8 (M.D. La. Dec. 4, 2014).
51599

Plaintiff argues that her disability is "coronary heart disease" and that Defendant has not contested this "qualifying disability" under the ADA.[193]  This is the extent of Plaintiff's "disability" argument.  Plaintiff does not direct the Court to any evidence or legal authority to support this position.  The Court has reviewed all record evidence and finds no mention of "coronary heart disease".  Therefore, the Court is unable to consider, much less make a finding, of a disability of coronary heart disease in this matter.

Plaintiff then argues that Defendant regarded her as being disabled.  Here, Plaintiff argues that Guba considered her to be "substantially limited with her bad back", and his "illegal efforts" to have her subjected to Shell's return-to-work examinations "show this clearly".  Guba's "subsequent attempts to build an 'occurrences' case against Plaintiff and have her fired spring from the same impermissible motivation".[194]  Plaintiff does not direct the Court to any admissible evidence to support these arguments, to properly evidence a "bad back", or to show Guba's improper motives.  Plaintiff makes no effort to explain Guba's "illegal efforts" or to show through proper summary judgment evidence that Guba was building a case against her with "impermissible motivation".

Thus, Plaintiff fails to show a *prima facie* case under this theory of recovery.  The record is void of admissible evidence establishing that Plaintiff was disabled owing to coronary artery disease or that Defendant considered Plaintiff to be physically impaired, allegedly due to her back condition.  Plaintiff offered nothing more than an unsubstantiated conspiracy theory involving Guba.  There is no admissible evidence from which a reasonable trier of fact could infer that the Defendant regarded Plaintiff as

---

[193] Rec. Doc. No. 36, p. 23.
[194] Rec. Doc. No. 36, p. 24.  Plaintiff does not cite to any exhibits or record evidence in support of this argument.

51599

disabled or that this perceived disability motivated her termination. Not one item of evidence produced by Defendant demonstrating Plaintiff's alleged misconduct referenced Plaintiff's alleged health problems or came close to suggesting that Defendant considered them in Plaintiff's termination.

The Plaintiff failed to present competent evidence of the first element of a *prima facie* case under the ADA. However, even if the Plaintiff was disabled or regarded as disabled, Plaintiff fails to show through competent summary judgment evidence that she was qualified for the position.

### ii. Qualified Individual

The second element of a *prima facie* case for a violation of the ADA is that plaintiff must show that she is qualified for the job position.[195] An individual is "qualified" under the ADA if she can perform the essential functions of her job, with or without a reasonable accommodation.[196] Defendant argues on summary judgment that Plaintiff is prevented from arguing that she can perform the essential functions of her job because she represented to the Social Security Administration, when applying for disability benefits, that she was unable to work.[197]

In *Cleveland v. Policy Management Systems Corp.*, the key issue for the United States Supreme Court was that the Social Security Administration defines a disability differently than the ADA, not allowing for an individual that can perform his/her job

---

[195] *Id.* at 697. *See also Suggs*, at *5.
[196] 42 U.S.C. § 12111(8).
[197] Rec. Doc. No. 31-1, pp. 12-14. Defendant relies *upon Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), and *Holtzclaw v. DSC Commc'ns. Corp.*, 255 F.3d 254, 259 (5th Cir. 2001), in advancing this argument.
51599

functions "with or without a reasonable accommodation".[198]  The Supreme Court held that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI claim.  Rather, the plaintiff must proffer "a sufficient explanation".[199]

To defeat summary judgment, the explanation by the plaintiff must be sufficient to warrant a reasonable juror concluding that, assuming the truth of or plaintiff's good faith belief in the earlier statement that she was totally disabled, the plaintiff could nonetheless perform her job with reasonable accommodation.[200]

In *Holtzclaw v. DSC Commc'ns. Corp.*, the district court granted summary judgment because the plaintiff was not physically able to do his job "with or without reasonable accommodation" and he failed to establish a *prima facie* case of discrimination.  The Fifth Circuit affirmed[201] and stated:

> *Cleveland* teaches that a plaintiff cannot change his story during litigation without a sufficient explanation for his inconsistent assertions.  Holtzclaw has offered no sufficient explanation for the contradiction between his disability applications and his claim that, when he reapplied for the job, he could have worked even without reasonable accommodation.  He therefore has failed to create a material issue of fact whether he is qualified for the position he sought.  Because he cannot establish that element of his *prima facie* claim, summary judgment was appropriate on the ADA claim.[202]

---

[198] *Cleveland,* 526 U.S. at 795-96.

[199] *Cleveland*, 526 U.S. at 805-06.("Nonetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim.  Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.' …  An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability' – that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job.  42 U.S.C. § 12111(8).  And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case – at least if she does not offer a sufficient explanation.  For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, she must proffer a sufficient explanation.").  *See also Voisin v. Georgia Gulf Corp.,* 245 F.Supp.2d 853, 860-61 (M.D. La. Nov. 4, 2002)(applying *Cleveland*).

[200] *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875, 881 (Tex.App. Jan. 29, 2004)(citing *Cleveland*, 526 U.S. at 807).

[201] *Holtzclaw*, 255 F.3d at 257.

[202] *Holtzclaw*, 255 F.3d at 259.

51599

Here, Defendant argues on summary judgment that Plaintiff must address the inconsistency between the allegations of her ADA claim (that she is capable to perform the essential functions of her job) and her prior representations to the Social Security Administration (that she is unable to work).[203]  The record evidence reflects that Plaintiff testified that she was unable to work due to her "disabling condition of her back" caused by the March 11, 2016, incident;[204] that she was disabled due to this condition at the time she filed her claim for disability benefits with the Social Security Administration;[205] and that she has been unable to work since March 11, 2016.[206]  Based on this evidence, Defendant argues that Plaintiff cannot demonstrate a *prima facie* case for disability discrimination under the ADA because she cannot show that she is qualified to perform her job responsibilities.[207]

Plaintiff argues in response that she testified that her back pain that rendered her disabled on March 11, 2016, was the aggravation of a pre-existing condition; that she has had these same flare-ups in the past; that she has been able to work "through it" in the past; but she was not able to do so this time.  She claims that she has been forced to receive Medicaid benefits, which does not afford her the same treatment as she had in the past when she had "flare-ups".[208]  Plaintiff claims that this is sufficient evidence to convince a reasonable factfinder that since she was able to defeat previous flare-ups of back pain, there is no reason to believe that she could not have done so here.[209]

---

[203] Rec. Doc. No. 31-1, p. 12.
[204] Rec. Doc. No. 31-3, Depo. of Amedee, p. 244.
[205] *Id.* at pp. 245-46.
[206] *Id.* at p. 247.
[207] Rec. Doc. No. 31-1, p. 14.
[208] Rec. Doc. No. 36, p. 25 (Rec. Doc. No. 31-3, Depo. of Amedee, pp. 245-47).
[209] Rec. Doc. No. 36, pp. 25-26.

51599

Although not argued by Plaintiff, the Court notes that the record reflects that Plaintiff has plead a claim for failure to provide reasonable accommodations under the ADA.[210]  Also, the Plaintiff's declaration reflects that there was work that she was capable of doing and that she made a request for a special chair to reasonably accommodate her back condition and office work.[211]   This evidence calls into question whether, even if Plaintiff was disabled from March 11, 2016, forward as she represented to the Social Security Administration, would she have been qualified to do her job with a reasonable accommodation under the ADA.  As such, the Court finds that there are genuine issues of material fact as to whether Plaintiff would have been qualified to perform her job duties with a reasonable accommodation and whether a reasonable juror could conclude that, despite her representations of disability to the Social Security Administration and in her deposition testimony, she could have returned to her job duties with reasonable accommodation.

### b.  Legitimate Non-Discriminatory Reason for Termination

Plaintiff has not made a *prima facie* showing of her claim for disability discrimination under the ADA.  Even assuming she did, Defendant advances the same argument for a legitimate non-discriminatory reason for termination as is set forth above regarding her FMLA claims.[212]   Based on the same analysis and reasons stated previously regarding Plaintiff's FMLA claims, the Court finds that the Defendant has made

---

[210] Rec. Doc. No. 7, ¶ 29.
[211] Rec. Doc. No. 36-2, ¶¶ 11, 31-33.
[212] Rec. Doc. No. 31-1, pp. 8-9.  Because the same burden-shifting framework applies to discrimination claims under the FMLA and ADA, Defendant addressed Defendant's purported legitimate, non-discriminatory reason for terminating Plaintiff and Plaintiff's argument of pretext or mixed-motives theory at the same time.
51599

a proper evidentiary showing supporting a legitimate, non-discriminatory reason for termination of Plaintiff's employment under the ADA.

Both the Fifth Circuit Court of Appeals and the district courts of Louisiana have granted and affirmed summary judgment where, regardless of the showing on the *prima facie* case, the fact that there was a legitimate, non-discriminatory reason for termination with no showing of pretext, warranted summary judgment on the discrimination claim.[213] As with Plaintiff's FMLA retaliation claim, absent from the record is any evidence of a connection between a discriminatory animus based on a disability to the subject termination based on recorded absences, early departures, late arrivals, and discussion in accordance with the Defendant's formal disciplinary process.[214] As such, the Court grants summary judgment in Defendant's favor on Plaintiff's claim of disability discrimination under the ADA.

---

[213] *See Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012)("Here, the district court assumed, without deciding, that Reed articulated a *prima facie* case. Neopost responded with a legitimate nondiscriminatory reason for Reed's termination: that he falsified customer surveys. Thus, the central question facing the court was whether Reed could demonstrate a genuine issue of material fact that Neopost intentionally discriminated against him." Plaintiff could do so by showing pretext or mixed motive.); *Kennedy*, at *14 ("Assuming the plaintiff could establish this element of her *prima facie* case …, the defendant has produced evidence that the plaintiff was terminated for a legitimate, non-discriminatory reason unrelated to her disability. … For the same reasons explained in the analysis of the ADEA claim, the evidence on which the plaintiff relies does not dispute the defendant's legitimate, nondiscriminatory reasons. Evidence of a *prima facie* case, without evidence to dispute the defendant's legitimate, nondiscriminatory reasons, is insufficient for a reasonable trier of fact to find the defendant's explanation for terminating the plaintiff is a pretext for discrimination based on her disability."); *Minnis v. Board of Sup'rs of Louisiana State Univ. and Agruicultural and Mech. College,* 55 F.Supp.3d 864, 883 (M.D. La. Oct. 21, 2014)("That notwithstanding, even if this Court were to accept that Minnis has satisfied the first two prongs of the retaliation analysis, Minnis's claim must still fail. As discussed previously, LSU has 'produc[ed] evidence that its employment decision was based on a legitimate nondiscriminatory reason,' … namely, that Minnis was terminated because of his inadequate job performance, and in particular, his deficient competitive record, which had been exhaustively documented. Accordingly, the burden shifts back to Minnis to show that LSU's 'proffered reasons were a pretext for discrimination'. … Minnis offers no facts of substance to rebut LSU's proffered reason for his termination.")(citations omitted).
[214] *See, e.g., Pinkerton v. Spellings*, 2006 WL 8437217, *7 (N.D. Tex. Apr. 6, 2006).
51599

2.  Request for Accommodation

Plaintiff separately alleges Defendant violated the ADA by failing to provide her with a reasonable accommodation.[215]  The ADA obligates an employer to reasonably accommodate the known physical or mental impairments of "a qualified individual with a disability".[216] This obligation arises once an employer is put on notice of an employee's need to be reasonably accommodated—which usually, but not always, occurs after the employee requests an accommodation.[217]  Once the employer is put on notice, the ADA requires both parties to engage in a good faith interactive process to develop a reasonable accommodation.

The precise "contours of the interactive process must be determined on a case-by-case basis."[218]  An employer that demonstrates a good faith effort to engage in the interactive process and to make a reasonable accommodation is shielded from liability for compensatory and punitive damages. On the other hand, "[w]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."[219]  But if the breakdown of the interactive process is traceable to the employee rather than the employer, there is no violation of the ADA.[220]

Here, Defendant claims that it moves for summary judgment on all of Plaintiff's claims and seeks dismissal of this entire matter without the need for trial.[221]  However,

---

[215] Rec. Doc. No. 7, p. 5, ¶ 29.
[216] 42 U.S.C. §§ 12112(b)(5)(A)-(B) (employer violates ADA by "not making reasonable accommodations").
[217] *Loulseged v. Azko Nobel Inc.,* 178 F.3d 731, 736 n. 5 (5th Cir.1999).
[218] *Picard v. St. Tammany Parish Hosp.,* 611 F.Supp.2d 608, 621 (E.D. La. 2009).
[219] *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 316 (5th Cir.2007).
[220] *Loulseged,* 178 F.3d at 736.
[221] Rec. Doc. No. 31-1, p. 1.
51599

Defendant's motion for summary judgment does not move for dismissal of or in any way address Plaintiff's claim for failure to make a reasonable accommodation under the ADA.[222] In opposition, Plaintiff sets forth the standard and applicable elements of a failure to accommodate claim in two very brief paragraphs, even though the Defendant did not move for summary judgment on this claim specifically.[223]

Defendant argues in its reply memorandum, "Amedee asserts that she requested a chair for her position in the unit control room beginning in January 2016, but she was not provided with one prior to her termination and therefore has a claim under the ADA for failure to accommodate. This is more misdirection."[224] Defendant argues that Plaintiff cannot "establish an entitlement to relief under the ADA", and Defendant concludes that "Amedee has not established a genuine issue of fact that she requested a medical accommodation or that she did not have access to the desired chair that remained in the control room."[225] However, Defendant does not acknowledge that Plaintiff plead this claim in her *First Amended Complaint*; that Defendant did not address this claim and put forth an evidentiary showing to support summary judgment on this claim; or that Defendant was addressing this issue as a separate claim for the first time in its reply memorandum.[226]

---

[222] Rec. Doc. No. 31-1. *See Loulseged,* 178 F.3d at 734 (5th Cir. 1999)("[I]t is perhaps arguable that the failure to accommodate an employee standing alone may give rise to a claim under the ADA. *Cf. Penny v. United Parcel Service*, 128 F.3d 408 (6th Cir. 1997)."); *Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016)(Apart from any claim that an adverse employment action was motivated by the employee's disability, an employer's failure to reasonably accommodate a disabled employee may constitute a distinct violation of the Act.").
[223] Rec. Doc. No. 36, p. 24.
[224] Rec. Doc. 42, p. 10.
[225] Rec. Doc. 42, pp. 10-11.
[226] *Id.*
51599

The Court previously found that Plaintiff has not made a showing that she is disabled or regarded as disabled, the first prong of her *prima facie* case under the ADA. Therefore, Defendant is not obligated to reasonably accommodate Plaintiff's purported physical impairment.[227] Because Plaintiff has not made a *prima facie* showing of a disability under the ADA, Plaintiff's claim for failure to make a reasonable accommodation also fails and is hereby dismissed.

## III. CONCLUSION

For the reasons set forth above, Shell Chemical LP's *Motion for Summary Judgment*[228] is granted.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 31, 2019</u>.

_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[227] *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)("Assuming that Jenkins is disabled, he must still prove that Cleco failed to reasonably accommodate him. *See* 42 U.S.C. § 12112(b)(5)(A)."); *Loulseged*, 178 F.3d at 734, n. 2("The ADA requires employers to make reasonable accommodations for disabled employees. … At oral argument, [defendant] argued that [plaintiff] did not qualify as disabled under the ADA. This was not the ground on which the district court granted judgment as a matter of law, and our resolution of the case makes it unnecessary to address this contention."); *Demarce v. Robinson Property Group Corp.*, 642 Fed.Appx. 348, 354 (5th Cir. 2016)("Ultimately, in order to prevail on a failure-to-accommodate claim, a plaintiff must prove: '(1) [she] is a "qualified individual with a disability," (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations.").
[228] Rec. Doc. No. 31.
51599